UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
A.K.,                                         :
                Plaintiff,                :
                                         :       **OPINION AND ORDER**
v.                                            :
                                         :       17 CV 769 (VB)
ANTHONY J. ANNUCCI, CLIFFORD A. ROWE, :
JEFFREY BOWERS, MATTHEW LATHAM,              :
SUPERINTENDENT BRANDON SMITH,                :
SUPERINTENDENT LYNN J. LILLEY,               :
DEPUTY SUPERINTENDENT OF SECURITY            :
TIMOTHY HUMPHREY, DEPUTY                     :
SUPERINTENDENT OF SECURITY THOMAS            :
MCGUINNESS, "JOHN" LOCKHART, "JOHN"          :
DIPAOLO, "JOHN DOES 1-25," fictitious names  :
used to identify presently unknown individuals, :
                    Defendants.             :
-------------------------------------------------------------x

Briccetti, J.:

        Plaintiff A.K. brings this action under 42 U.S.C. § 1983, alleging defendants Anthony J.

Annucci ("Acting Commissioner Annucci"), Sergeant ("Sgt.") Jeffrey Bowers, Correction

Officer ("C.O.") Matthew Latham, Superintendent ("Supt.") Brandon Smith, Supt. Lynn J.

Lilley, Deputy Supt. of Security Timothy Humphrey, Deputy Supt. of Security Thomas

McGuinness, "John" Lockhart, Sgt. Doug Depaolo[1] (collectively, the "State represented

defendants"), C.O. Clifford A. Rowe, and twenty-five unidentified "John Does," violated her

constitutional rights during her incarceration at Greene Correctional Facility ("Greene") and

Woodbourne Correctional Facility ("Woodbourne"), which are prisons operated by the New

York State Department of Corrections and Community Supervision ("DOCCS").

        Now pending is the State represented defendants' partial motion to dismiss the amended

complaint pursuant to Rule 12(b)(6).  (Doc. #59).

---

[1]      Sgt. Depaolo is sued herein as "John Dipaolo."

For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of deciding the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff is transgender, and undergoing male-to-female gender transitioning. At all times relevant to the amended complaint plaintiff presented herself as a woman.

Plaintiff alleges that before she was transferred to Greene she was "sexually victimized" by a chaplain at Rikers Island.[2] (Am. Compl. ¶ 32). Plaintiff reported the incident to DOCCS, and the "information was added to her file," along with paperwork regarding her transgender identity. (Id.)

In January 2014, plaintiff was transferred to Greene, and in September 2014, plaintiff was transferred to Woodbourne, where she was incarcerated until sometime in 2016.

Plaintiff alleges she was repeatedly raped and sexually assaulted by correction officers during her incarceration at Greene and Woodbourne.

I.      Plaintiff's Allegations Regarding Heightened Risk

Plaintiff alleges a Commission established in connection with the Prison Rape Elimination Act, 34 U.S.C. § 30301, issued a report in 2009 finding male-to-female transgender inmates face a heightened risk of sexual assault in prison.

---

[2]     The Court takes judicial notice of the fact that Rikers Island is a jail complex operated by the New York City Department of Correction.

Plaintiff further alleges the Bureau of Justice Statistics and the National Institute of Corrections have each noted publicly that lesbian, gay, bisexual, and transgender inmates are particularly vulnerable to sexual abuse while incarcerated.

In addition, plaintiff alleges defendants received numerous materials highlighting the heightened risk to transgender inmates: (i) a study by the Sylvia Rivera Law Project; (ii) an article by Solitary Watch; (iii) a report submitted by the Correctional Association of New York; and (iv) testimony from Jack Beck, the director of the Correctional Association's Prison Visiting Project, to the Department of Justice and the Review Panel on Prison Rape. Moreover, plaintiff alleges defendants received training regarding transgender inmates' high risk of sexual violence.

Finally, according to plaintiff, her file included letters from family, clergy, attorneys, and advocacy groups regarding the heightened risk of sexual violence she faced as a transgender prisoner.

In view of the foregoing, plaintiff alleges defendants were on notice that plaintiff specifically, and transgender inmates generally, face a heightened risk of sexual assault in prison.

II.     Plaintiff's Allegations Regarding Greene

Plaintiff alleges that beginning in February 2014, C.O. Rowe provided her special privileges including snacks and private showers.

In approximately July 2014, C.O. Rowe began rousing plaintiff in the middle of the night to confide in her. Sometime in the summer of 2014, C.O. Rowe orally and anally raped plaintiff in an area restricted to officers only.

On September 3, 2014, C.O. Rowe forced plaintiff to perform oral sex, again in the restricted officers' area. Upon returning to her sleeping area, plaintiff saved C.O. Rowe's semen in a pill bottle.

A fellow inmate saw plaintiff leaving the officers' area, and reported the incident to a DOCCS counselor. Plaintiff was taken to the hospital, where a rape kit was administered. Also, plaintiff was questioned by state investigators, and she provided them the pill bottle of C.O. Rowe's semen.

C.O. Rowe was arrested, and on August 8, 2016, he pleaded guilty to official misconduct.

Plaintiff alleges she was also abused by C.O. Latham during the same time period. According to plaintiff, around February 15, 2014, C.O. Latham pat frisked her and asked if she was a "faggot." (Am. Compl. ¶ 57). Plaintiff did not respond, and C.O. Latham kicked her and struck her in the head.

Between February 2014 and April 2014, C.O. Latham repeatedly denied plaintiff her estrogen pills, and threatened to "fuck [her] up" if she asked for them. (Am. Compl. ¶ 58).

Plaintiff alleges she feared C.O. Latham, who was physically abusive to "most prisoners." (Am. Compl. ¶ 59). Plaintiff told a John Doe school sergeant that she felt threatened and sexually harassed by C.O. Latham, but the sergeant "took no action to notify his direct superiors or other supervisory personnel." (Am. Compl. ¶ 61).

On approximately June 6, 2014, about a week after plaintiff reported her fears to the school sergeant, C.O. Latham took plaintiff's legal mail and read it aloud to other inmates.

On other occasions, C.O. Latham choked plaintiff, punched her, and made sexual remarks while fondling plaintiff's breasts, buttocks, and groin during pat frisks.

According to plaintiff, Greene Supt. Smith and Deputy Supt. McGuinness were aware of the serious risk of sexual assault plaintiff faced, and failed to remediate the risk. Plaintiff alleges Supt. Smith and Deputy Supt. McGuinness were responsible for conducting rounds of housing areas, reading log books, and making visual inspections of housing areas. Plaintiff alleges Supt.

4

Smith and Deputy Supt. McGuinness knew the housing area was understaffed and isolated, but nevertheless made predictable rounds and failed to ensure that purportedly secure areas were in fact secure.

According to plaintiff, Supt. Smith and Deputy Supt. McGuinness's negligence allowed C.O. Rowe and C.O. Latham to abuse plaintiff without detection or consequence.

## III.  Plaintiff's Allegations Regarding Woodbourne

Plaintiff alleges that when she arrived at Woodbourne, Sgt. Bowers and other John Doe correction officers "made it clear" they disliked her because of her interaction with C.O. Rowe at Greene.  (Am. Compl. ¶ 69).

Plaintiff alleges that between September 2014 and mid-2016, Sgt. Bowers repeatedly raped and groped her, and would come to her cell and order her to masturbate in his presence. Sgt. Bowers often abused plaintiff in prison areas to which he was not assigned.  On one occasion, correction officers found plaintiff and Sgt. Bowers talking in a stairwell after 10:00 p.m.

According to plaintiff, other inmates and correction officers were aware of Sgt. Bowers's behavior.  A fellow inmate allegedly reported Sgt. Bowers's abuse to the Inspector General's Office.  In addition, C.O. Lockhart asked plaintiff why Sgt. Bowers was always around plaintiff's cell.  Sgt. Depaolo told plaintiff he "knew about the nasty stuff going on with Bowers," and on another occasion said "[w]e all know about it."  (Am. Compl. ¶ 77). Nevertheless, neither C.O. Lockhart nor Sgt. Depaolo reported Sgt. Bowers's abuse to supervisory personnel.

According to plaintiff, Supt. Lilley and Deputy Supt. Humphrey were aware of the serious risk of sexual assault plaintiff faced, and failed to remediate the risk.  Plaintiff alleges

5

Supt. Lilley and Deputy Supt. Humphrey failed to supervise the area where plaintiff was housed, or the correction officers working there. According to plaintiff, the lack of routine supervision allowed Sgt. Bowers to be alone with plaintiff for extended periods of time without detection or consequences.

IV.     Plaintiff's Allegations Regarding Inadequate Investigation

Plaintiff alleges that despite rising numbers of staff sexual misconduct complaints, Acting Commissioner Annucci, Supt. Smith, Supt. Lilley, Deputy Supt. McGuinness, and Deputy Supt. Humphrey (collectively, the "Supervisory defendants") maintained a policy of failing to fully investigate inmate complaints regarding sexual abuse and harassment.

According to plaintiff, only her complaint about C.O. Rowe was "thoroughly investigated." (Am. Compl. ¶ 109). Plaintiff alleges neither C.O. Latham nor Sgt. Bowers was investigated, nor were their sergeants, captains watch commanders, or deputies. In addition, plaintiff alleges C.O. Latham and Sgt. Bowers were not disciplined in connection with their behavior toward her, nor were their supervisors disciplined for their failure to prevent the same.

V.     Plaintiff's Allegations Regarding Negligent Supervision

In addition to her allegations regarding the Supervisory defendants' failure to ensure housing was safe and secure, plaintiff alleges the Supervisory defendants failed properly to hire and screen prison staff.

Plaintiff alleges the Supervisory defendants knew certain officers abused inmates, due to prior allegations and investigations, but did nothing to protect her.

According to plaintiff, the Supervisory defendants did not conduct background or fingerprint checks of staff, oversee DOCCS hiring, or monitor correction officers after they were hired. In addition, plaintiff alleges the Supervisory defendants failed properly to vet new hires,

supervise and review employee performance, ensure defendants were not smuggling contraband to inmates, follow strict professional and character standards when assessing prison facilities, train staff to recognize inmate coercion and sexual abuse, or patterns of officer misconduct, or adopt policies regarding any of the foregoing.

According to plaintiff, after the Supervisory defendants learned about the abuse plaintiff experienced at the hands of the Rikers Island chaplain, C.O. Rowe, C.O. Latham, and Sgt. Bowers, she was not classified as requiring protective custody, or offered housing where she and correction officers would be under greater observation.

## DISCUSSION

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

7

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

II.      Failure to Protect Claim

Defendants argue plaintiff fails to state an Eighth Amendment failure to protect claim against the Supervisory defendants.

The Court disagrees.

A failure to protect claim arises if prison officials act "with deliberate indifference to the safety of the inmate.  However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (internal quotation and citation omitted).

A claim for deliberate indifference brought by a convicted prisoner is analyzed under the Eighth Amendment.  See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).   To state an Eighth Amendment claim for deliberate indifference, a plaintiff's allegations must satisfy a two-prong test.  First, the plaintiff must plausibly allege she suffered a sufficiently serious constitutional deprivation.  Second, the plaintiff must plausibly allege that the defendants acted with deliberate indifference.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

With respect to the first prong, "the deprivation alleged must be, objectively, sufficiently serious . . . ; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. at 834 (internal citations and quotation marks omitted) (emphasis added).  "For a claim . . . based on a failure to prevent harm, the inmate must show that [s]he is incarcerated under conditions posing a substantial risk of serious harm." Id.

8

With respect to the second prong, a correction officer acts with deliberate indifference when he subjectively "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d at 620. The officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000) (internal citation omitted). See also Farmer v. Brennan, 511 U.S. at 837.

Defendants argue plaintiff's allegations do not satisfy the second prong of the deliberate indifference standard. The Court is not persuaded.

In similar circumstances, addressing the deliberate indifference claim of a transsexual inmate, the Supreme Court stated the subjective prong of a deliberate indifference claim is "subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer v. Brennan, 511 U.S. at 842.

Here, plaintiff alleges the Supervisory defendants received investigative reports, advocacy letters, statistics, and training regarding the heightened risk of sexual violence faced by transgender inmates. In addition, plaintiff alleges the Supervisory defendants were aware that plaintiff was transgender, in the midst of transitioning from male to female, and had a documented history of sexual abuse in prison. Specifically, plaintiff's file indicated she was "sexually victimized" at Rikers Island, and plaintiff's complaint regarding C.O. Rowe resulted in his criminal prosecution. (Am. Compl. ¶ 32).

If a substantial risk of harm was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official

being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk." Farmer v. Brennan, 511 U.S. at 842–43.

Thus, at this early stage of the case, plaintiff has plausibly alleged the Supervisory defendants were aware plaintiff faced a substantial risk of serious harm as a transgender inmate. See, e.g., Manning v. Griffin, 2016 WL 1274588, at *7 (S.D.N.Y. Mar. 31, 2016) ("Plaintiff's allegations demonstrating the widespread recognition . . . that transgender inmates face heightened risks of sexual assault, including in DOCCS facilities, render it plausible that Defendants . . . were aware that the Plaintiff 'belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates,' and thus was subject to a heightened risk of harm as a transgender prisoner in a male prison.") (internal citations omitted); Lojan v. Crumbsie, 2013 WL 411356, at *4 (S.D.N.Y. Feb. 1, 2013) ("the argument that more than mere knowledge of Plaintiff's transgender status was required to put Defendant on notice of Plaintiff's vulnerability is spurious").

Having found the Supervisory defendants knew plaintiff faced a substantial risk of harm, the Court also finds defendants disregarded that risk. Plaintiff alleges the Supervisory defendants failed to place her in protective custody, or assign her to housing where she and correction officers would be under greater observation, despite her transgender identity and documented history of sexual abuse.

Accordingly, plaintiff sufficiently alleges a failure to protect claim.

III.    Personal Involvement

Defendants argue plaintiff has failed to allege the Supervisory defendants' personal involvement in failing to protect plaintiff from the alleged sexual abuse.

The Court disagrees, except with respect to Acting Commissioner Annucci.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994) (citing Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "Supervisor liability under § 1983 'can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.'" Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (quoting Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003)) (collectively, the "Colon factors"); see Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Here, plaintiff alleges Supt. Smith and Supt. Lilley were directly responsible "for knowing about the history of sexual abuse and harassment of each prisoner, the history of sexual abuse and harassment by each officer, and the location(s) where allegations of sexually abusive behavior occurs." (Am. Compl. ¶¶ 20, 21). In addition, plaintiff alleges Supt. Smith and Supt. Lilley were responsible "for being familiar with each prisoner's file, including letters from family, clergy, attorneys, and advocacy groups which detail the heightened risk plaintiff faced as a transgender prisoner." (Id.).

Likewise, plaintiff alleges Deputy Supt. Humphrey and Deputy Supt. McGuinness were responsible for "for knowing about the history of sexual abuse and harassment of each prisoner, the history of sexual abuse and harassment by each officer, and the location(s) where allegations of sexually abusive behavior occurs." (Am. Compl. ¶¶ 22, 23).

Nevertheless, Supt. Smith, Supt. Lilley, Deputy Supt. Humphrey, and Deputy Supt. McGuinness failed to place plaintiff in protective custody or housing with greater supervision. At this early stage, plaintiff's allegations are sufficient to satisfy the fifth <u>Colon</u> factor.[3]

However, plaintiff's allegations with respect to Acting Commissioner Annucci are generalized, conclusory, and fail plausibly to suggest he was personally involved in the relevant acts and decisions here. Therefore, the claim against Acting Commissioner Annucci is dismissed. <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 154 (2d Cir. 2001); <u>Colon v. Coughlin</u>, 58 F.3d at 873.

IV.     <u>Qualified Immunity</u>

Defendants argue the Supervisory defendants are entitled to qualified immunity as to plaintiff's failure to protect claim.

Qualified immunity shields government officials from damages suits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). A qualified immunity defense is established if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Tierney v. Davidson</u>, 133 F.3d 189, 196 (2d Cir. 1998).

---

[3]     The Court notes that after <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009), district courts within this circuit are divided regarding whether claims alleging personal involvement under the second, fourth, and fifth <u>Colon</u> factors remain viable. <u>See</u> <u>Marom v. City of N.Y.</u>, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016). The Second Circuit has yet to resolve this dispute. <u>Id</u>. However, that court's decision in <u>Turkmen v. Hasty</u>, 789 F.3d 218, 250 (2d Cir. 2015), <u>rev'd in part on other grounds sub nom.</u> <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843 (2017), supports a reading of <u>Ashcroft v. Iqbal</u> that permits supervisory liability when the supervisor's actions violate the terms of the constitutional provision at issue. Here, plaintiff alleges the Supervisory defendants' conduct amounted to deliberate indifference.

After discovery, and based on a more complete record, the Court may well decide it was objectively reasonable under all the relevant circumstances for defendants to believe plaintiff did not require protective custody or housing with greater observation. Accordingly, the Court will defer until then the question of whether the Supervisory defendants are entitled to qualified immunity.

V.      First Amendment Retaliation Claim

Defendants argue plaintiff fails to state a First Amendment retaliation claim based on C.O. Latham reading plaintiff's legal mail to other inmates.

The Court agrees.

To "sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation omitted). In view of "the ease with which claims of retaliation may be fabricated," courts "examine prisoners' claims of retaliation with skepticism and particular care." Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order). Thus, "a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." Friedl v. City of N.Y., 210 F.3d 79, 85–86 (2d Cir. 2000).

Here, plaintiff's allegations are insufficient to satisfy the second prong of the inquiry, as "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation omitted). Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the

13

ambit of constitutional protection." Id. "Courts in this circuit have held that claims of mail tampering do not constitute adverse action." Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (collecting cases).

Accordingly, plaintiff's First Amendment retaliation claim against C.O. Latham is dismissed.

VI.     Leave to Amend

Plaintiff seeks leave to submit a second amended complaint with respect to any inadequately pleaded claims.

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, having carefully reviewed the amended complaint, the Court does not find any allegations that suggest plaintiff has a valid Eighth Amendment claim against Acting Commissioner Annucci or a valid First Amendment retaliation claim against C.O. Latham that she has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112.

Moreover, the Supervisory defendants previously filed a motion to dismiss (Doc. #32), subsequent to which plaintiff was granted leave to submit an amended complaint. (Doc. #36). However, the amended complaint does not cure the deficiencies specifically identified in the earlier-filed motion to dismiss. Thus, the Court finds that repleading again would be futile, because the problems with the dismissed claims in plaintiff's amended complaint are substantive,

and supplementary and/or improved pleading will not cure its deficiencies.  See <u>Cuoco v.</u>
<u>Moritsugu</u>, 222 F.3d at 112.

Accordingly, the Court declines to grant plaintiff further leave to amend.

## CONCLUSION

The motion to dismiss is GRANTED with respect to plaintiff's Eighth Amendment claim

against Acting Commissioner Annucci, and the First Amendment retaliation claim against C.O.

Latham.  The motion is DENIED in all other respects.

The State represented defendants shall file an answer to the amended complaint by

September 27, 2018.  The next case management conference in this case remains scheduled for

December 5, 2018, at 9:30 a.m.

The Clerk is instructed to (i) terminate the motion (Doc. #59); and (ii) terminate

defendant Anthony J. Annucci.

Dated:  September 13, 2018
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge